IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN WALTON, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | No: 21-860 |
| v. | ) | |
| | ) | US District Judge Nora Barry Fischer |
| WESTMORELAND COUNTY, Pennsylvania, and GINA CERILLI, COMMISSIONER, in her individual capacity, | ) ) ) ) | **ELECTRONICALLY FILED** |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

**BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

I. **STATEMENT OF THE CASE**[1]

Plaintiff is the former Warden of the Westmoreland County Prison, a position that he held between 2003 through November 6, 2020. ECF 1 at ¶1. Defendant Ms. Cerilli sits on the Board of Commissioners of Westmoreland County as well as the Westmoreland County Prison Board. *Id*. at ¶3.

Plaintiff maintains that he resigned and retired on November 6, 2020 following a "constructive discharge" based on Cerilli's actions that subjected him to "constant harassment and a pervasive hostile work environment" from between 2015 and November 2020. *Id*. at ¶¶8-10.

Plaintiff's allegations, while repeatedly vague and imprecise, begin in June 2016 when "Cerilli directed Walton to make several political hires," which are unidentified and which

---

[1] Defendants generally deny the allegations in Plaintiff's Complaint and offers this background pursuant to Rule 12(b)(6) solely for purposes of this motion to dismiss.

allegedly set off a "never-ending campaign of discrimination, retaliation, and character assassination in an effort to harm and get rid of Walton."  *Id*. at ¶11.

At some point in June/July of 2016 Ms. Cerilli "moved" to fire Walton, and additionally made "unfounded complaints" against him at some unidentified time.  *Id*. at ¶¶12-13.

In November 2018 Cerilli stated that she had previously voiced her "disgust" for Plaintiff. *Id*. at ¶15.

At again, some unidentified time, Cerilli criticized Plaintiff's suspension of Henry Caruso, a man who's position is not even identified.  *Id*. at ¶¶16-17.  Apparently, in July 2019 Plaintiff received a letter from Mr. Caruso's wife that "detailed a deal between Caruso, Cerilli, and others to protect Caruso's family if Walton was removed as the Warden."  *Id*. at ¶20.

In April 2019 Plaintiff filed unspecified "complaints of harassment and retaliation" with the Prison Board, which were apparently investigation by "a law firm," though the outcome of the investigation is not pled.  *Id*. at ¶¶18-19.

On September 27, 2019,[2] Plaintiff filed a Charge of sex and age discrimination following which "the harassment continued."  *Id*. at ¶¶22-23.  Plaintiff vaguely contends that the "public insults, false and defamatory accusations, and unfounded criticism of his job performance" by Defendant Cerilli, who repeatedly tried to have him "fired" as he ran the prison like a "circus."  *Id*. at ¶¶23-25.

Finally, Plaintiff contends that in July 2020 he did not receive a pay increase.  *Id*. at ¶27.

---

[2] Defendants are unclear an when Plaintiff filed the charge given that paragraph 5 states that it was filed on September 11, 2019.

Plaintiff even goes so far as to plead averments related to an entirely separate lawsuit filed by James Burgess wherein he claims that Cerilli instigated his "wrongful termination," despite the docket on this case clearly indicating that the matter was dismissed with prejudice at the Rule 12 stage.  *Id*. at ¶21; *See also, James Burgess v. Gina Cerilli*, 2:18-cv-1189, ECF 31.

The sole references to Plaintiff's age are that he was 62 years old when he separated from employment.  *Id*. at ¶1.  The only allegations specifically related to Plaintiff's gender, are that at some unidentified time and place Cerilli publicly stated that "Walton could not take orders from a "female superior"" and called him a "Neanderthal."  *Id*. at ¶14.

Plaintiff now brings four causes of action: Count I (§1983 Political Affiliation) against Defendants; Count II (Sex Discrimination/Harassment/Retaliation) against Westmoreland County; Count III (ADEA) against Westmoreland County; and Count IV (Intentional Infliction of Emotional Distress) against Defendant Cerilli.

**II.**     **STANDARD OF REVIEW**

According to the Supreme Court in the watershed case of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007), "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations [citations omitted], a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Subsequently in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court further explained its holding in *Twombly* as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . "
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not "show[n]"--"that the pleader is entitled to relief."

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-1950 (2009) (citations omitted).

### III.      ARGUMENT

#### A.      All of Plaintiff's claims arising before November 15, 2018 are time-barred.

Our Courts have explained that "[a]n EEOC charge must be filed within 300 days of the 'alleged unlawful employment practice' if the individual has initiated proceedings with a state or local agency, or 180 days if it is not dually filed. *Emmell v. Phoenixville Hospital Company, LLC*, 303 F. Supp. 3d 314, 325 (E.D. Pa. Mar. 29 2018)(quoting 42 U.S.C. § 12117(a) § 2000e-5(e)(1) (establishing the limitation periods)(Title VII); 29 U.S.C. § 626(d)(1) (ADEA).  The Courts have explained that "[o]therwise, the claim is time barred and the claimant cannot recover." *Id.*  "Both the 180–day period for filing the administrative complaint and the 90–day period for filing the court action are treated as statutes of limitations." *Burgh v. Borough of Council of Borough of Montrose*, 251 F.3d 465, 470-1 (3d Cir. 2001) (citing *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (likening requirement of timely filing of

4

administrative charge to statute of limitations); *Figueroa v. Buccaneer Hotel Inc.,* 188 F.3d 172, 176 (3d Cir.1999) (same with respect to time for bringing court action after receipt of right-to-sue letter)).

Courts have strictly construed the 90–day period and held that, in the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed. *Id*. However, "the statute of limitations does not begin to run unless and until there is "final agency action," such as the issuance of a right-to-sue letter." *Id*. (internal citations omitted). **Without that final agency action, the complainant has not exhausted his administrative remedies and cannot bring suit.** *Id*. (internal citations omitted)(emphasis added).

As an initial matter, Plaintiff complains of events occurring as early as 2015 through his separation on November 6, 2020. Substantively, from what Defendants can discern, Plaintiff vaguely complains of Cerilli's actions to "get rid of" him between 2015 and November 2020, and failure to receive a pay increase in July 2020. Plaintiff filed an EEOC Charge on September 11, 2019. ECF 1 at ¶5. To be within the statute of limitations on these older claimed discriminatory acts, Plaintiff must clearly plead when the EEOC issued a right to sue on those claims, that being June 15, 2021. *Id*. at ¶5. As a result, the allegations arising out of anything more than 300 days prior to his 2019 Charge have passed the applicable statute of limitations to file in Federal Court.

To this end, Plaintiff does not clearly plead a right to relief on any claims prior to November 15, 2018 (300 days prior to the 2019 EEOC Charge filing set forth at ¶¶5, 27). The only allegations in the Complaint occurring after this date, or within the applicable statute of limitations, are that Cerilli tried to "oust" Walton by stating her "disgust" for him (¶15), that Cerilli criticized him

5

(¶¶16-17), that he was subjected to unidentified "public insults, false and defamatory accusations, and unfounded criticism of his job performance" (¶24), that Cerilli stated Walton ran the prison like a "circus" (¶25) and that Plaintiff did not received a pay increase in July 2020 (¶27).

Any claims arising out of claimed "harassment and a pervasive hostile work environment" beginning in 2015 which include; (¶10), Cerilli's political actions in 2016 (¶11), Cerilli's movement to fire Walton in 2016 (¶12), "unfounded complaints" against Walton (¶13), and the alleged statement about Walton being unable to take orders from a female superior (¶14) are barred by the statute of limitations and should be dismissed accordingly.

> **B.     Defendant Cerilli cannot be held liable for the actions of the Westmoreland County Prison Board or Board of Commissioners as a whole.**

The overarching theme throughout the Complaint is to single out Defendant Cerilli as being responsible for his termination.  Yet Defendant Cerilli is but one of five members of the Westmoreland County Prison Board and a one of three members of the Board of Commissioners. She had no capability as a single member of either the Prison Board or the Commissioners to take final action on an employment decision nor can she be held personally liable for any acts of those Boards as a whole.

A single elected official who is part of a governing board has no authority to act on her own but can only cast a vote with a majority of the board which acts as the governing body of the local agency. *Kuzel* at 861; 53 P.S. §65603. A single board member cannot be held solely or individually liable for the action of the Board. *Kuzel*, 658 A.2d at 861.  It follows that Ms. Cerilli cannot be held liable for any claim of discharge where the action of the Boards as a whole would

be necessary to terminate Plaintiff.  *See Kuzel*, 658 A.2d at 860.  While Defendants appreciate that Plaintiff appears to be making a constructive discharge claim, although disputed, to the extent Plaintiff makes claims against Ms. Cerilli solely she could not have acted alone and thus no claim against her individually can remain. Simply put, Ms. Cerilli did not have the authority or power to terminate Plaintiff on her own.  It is thus manifest that Cerilli did not constructively discharge Plaintiff, and thus, she must be dismissed as an individual defendant.

> **C.    Plaintiff has not sufficiently pled an individual capacity claim against Defendant Cerilli.**

Plaintiff's Complaint purports to assert an individual capacity claim against Commissioner Cerilli at Counts I and IV.   However, Plaintiff's Complaint contains only fleeting and vague allegations against her such that she is not on notice of which of her individual intentional action(s) allegedly violated Plaintiff's rights.  It is well established that an individual, government defendant, in a civil rights action "must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  *See also Evancho v. Fisher*, 423 F.3d 347 (3d Cir. 2005).  Even under the liberal notice pleading standard of Fed. R. Civ. P. 8(a) which the United States Supreme Court later clarified in the cases of *Twombly* and *Iqbal*, barebones allegations and thread-bare recitals of the elements of a cause of action supported by mere conclusory statements do not survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.  A civil Complaint must set out sufficient factual matter that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*.  A civil rights complaint is

only adequate where it stays the conduct, time, place, and persons responsible. *See Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980). *See also Fowler*, supra. A plaintiff's Complaint must do more than allege his entitlement to relief. His Complaint has to show such an entitlement based on well pleaded facts that infer more than the mere possibility of misconduct and that the plaintiff is entitled to relief. *Fowler*, 578 F.3d at 210-11.

Here, the Complaint does not allege any specific conduct by Cerilli that could rise to the level of an individual capacity claim. The only allegations pertaining to Commissioner Cerilli are as follows; Cerilli tried to "oust" Walton by stating her "disgust" for him (¶15), that Cerilli criticized him (¶¶16-17), that he was subjected to unidentified "public insults, false and defamatory accusations, and unfounded criticism of his job performance" (¶24), that Cerilli stated Walton ran the prison like a "circus" (¶25) and that Plaintiff did not received a pay increase in July 2020 (¶27). Each of these allegations against Ms. Cerilli are vague and overly generalized. None of these allegations against her are clear enough to meet the pleading requirements set forth by the United States Supreme Court or the Third Circuit at this initial pleading stage. Certainly, Cerilli is not on notice as to which of her respective actions allegedly violated Plaintiff's rights. The allegations do not identify specific conduct, let alone the time and place of such conduct.

It remains that Plaintiff does not allege any facts to explain how a single Commissioner could have single-handedly orchestrated his "constructive discharge." What is alleged are mere conclusory allegations which are insufficient to satisfy the notice pleading standard. *See e.g. Feliz v. Kintoch Group*, 297 Fed.Appx. 131, 136 (3d Cir. 2008) citing *Abbott v. Latshaw*, 164 F.3d 141, 148 (3d Cir. 1998).

Accordingly, Defendant Cerilli, submits that the Complaint fails to set forth a cause of action against her in her individual capacity at Counts I and IV and respectfully request that Plaintiff's individual capacity claims against her be dismissed.

> D. **Count I of the Complaint should be dismissed because Plaintiff has failed to set forth sufficient facts to establish a cause of action for alleged political affiliation pursuant to Section 1983 and the First Amendment.**

Plaintiff contends in Count I of his Complaint against the "Defendants" that he was constructively discharged because of his political affiliation. The problem with Count I is that it lacks sufficient facts to establish discrimination. Accordingly, Plaintiff has not established a First Amendment/political association claim as a matter of law[3].

In order to sustain a First Amendment political patronage discrimination claim[4], a plaintiff must sufficiently allege a *prima facie* case in their Complaint. *See Galli v. NJ Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007). The Third Circuit in *Galli* adopted a three-part test to evaluate a claim of employment discrimination based on political association in violation of the First Amendment. *See Galli*, 490 F.3d at 270-71; *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 663 (3d Cir. 2002). Specifically, a plaintiff must allege that (1) he was employed at a public agency in a position that does not require political affiliation, (2) he was engaged in constitutionally protected conduct affiliated with a political party, and (3) that his conduct was a substantial or motivating factor in his termination. *Galli*, 490 F.3d at 271; *Goodman*, 293 F.3d at 663-64. If a

---

[3] Defendant Cerilli invokes her arguments set forth in Section "B" above that she alone lacked authority to take adverse employment action against Plaintiff.
[4] For purposes of this motion, Defendants will not dispute Plaintiff's allegations that the Defendants were acting under color of state law.

plaintiff can establish her *prima facie* claim, the public employer may avoid a finding of liability by proving that the same employment action would have been taken even in the absence of the protected activity. *See Galli*, 490 F.3d at 271 citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Applying these elements to Plaintiff's claims as alleged in his Complaint, Plaintiff does not state a claim for political affiliation in violation of the First Amendment against any of the Defendants. There are no allegations that he exercised or sought to exercise his First Amendment rights relative to political affiliation. There are no allegations that Defendants' conduct "impeded political expression and association". Plaintiff makes no claims that he actively supported a specific political party or political candidate of any party or that he took any politically affiliated actions for or against the named Defendants. Plaintiff does not assert that he was a member of any particular political party and he does not allege the specific political affiliation of the County's Commissioners and/or the Prison Board Solicitor or that they worked for or against each other. Plaintiff does not identify in his Complaint what these Defendants' political preference is in conjunction with Cerilli or how that caused political opposition and how that is allegedly protected First Amendment conduct. Plaintiff's Complaint at this count is rife with conclusory allegations asserting generally that the Defendants discriminated against him because of "his political affiliation in violation of Plaintiff's right to belief and association" without any further detail identifying his beliefs and/or association and how it conflicted with the named Defendant's beliefs and associations. *See generally*, ECF 1.

Further, all of Plaintiff's factual allegations leading up to Count I make absolutely no reference to political affiliation and are all very vague and disjointed claims about Ms. Cerilli's general dislike of him, presumably, somehow connected to his age and gender discrimination claims. The Defendants and especially Defendant Cerilli (against whom Plaintiff is attempting to bring an individual capacity claim), are entitled to more than mere conclusory statements. Plaintiff's is legally required to set out "sufficient factual matter" to show that his claim is facially plausible. *Fowler*, 578 F.3d at 210.

Disregarding all of the legal conclusions Plaintiff raises in Count I, the "facts" supporting Plaintiff's legal claim appears to raise a theory that the Defendants did not want Plaintiff to continue in his position of Warden of the Westmoreland County Prison. *See* ECF 1, ¶¶7-28. However again, Plaintiff's vague statements that Cerilli directed him "to make several political hires" (¶11), regarding Cerilli's criticism of Plaintiff's suspension of one of her "political supporter[s]" (¶16) and finally an ancillary averment regarding a case that was dismissed through Rule 12 regarding one of Ms. Cerilli's "political rival[s]" (¶21) do not suffice pursuant to the standards set forth in *Iqbal* and *Twombly*. "Mere political association is an inadequate basis for imputing disposition to ill-willed conduct." *Elrod v. Burns*, 427 U.S. 347, 359 (1976).

Even taking Plaintiff's allegations as a whole in Count I, Plaintiff is essentially asserting a possibility of being constructively removed from a non-policy making position that does not require a political affiliation into a policy-making position. It is well established that termination of public employees because of their political affiliation violates the First Amendment unless the position at issue involves policy making. *Elrod*, 427 U.S. at 359 and *Branti v. Finkel*, 445 U.S.

507, 513-17 (1980). Thus, taking Plaintiff's allegations as true that Cerilli was trying to prevent him from continuing in his position, which could not have happened solely by Cerilli by operation of law (see argument at III(B)), Plaintiff has failed to state a First Amendment claim for political affiliation as a matter of law. Again, to the extent that Plaintiff's right is unclear in this specific factual situation, then the individual Defendant is entitled to qualified immunity on Plaintiff's claims at Count I.

It follows that Plaintiff's vague, non-supporting allegations are not specific enough to be considered as a substantial or motivating factor in any terms or conditions of his employment, let alone any claimed "constructive discharge." Because Plaintiff's allegations on this claim are so vague, Defendants cannot discern what, if any, of Plaintiff's actions amounted to political affiliation that could have formed the basis for his separation. Similarly, Plaintiff has failed to sufficiently allege the nature of his political non-affiliation as the case may be, which Defendants recognize as also protected. *Galli*, 490 F.3d at 272-73 (citing *Bennis v. Gable*, 823 F.2d 723, 727n.4, 731 (3d Cir. 1987)). Plaintiff's Complaint lacks any allegations that he was affiliated or not affiliated with any preferred political candidate, organization or association or that he was generally political or apolitical. Plaintiff must at least allege sufficient factual material that – taken as true – supports his inference that his political affiliation amounts to constitutionally protected conduct. Since Plaintiff has failed to plead any allegations of this sort, it follows that he has not pled enough to meet the final causation requirement of his *prima facie* case. Plaintiff has failed to plausibly establish in his pleading that he was engaged in constitutionally protected conduct that formed the basis of his separation. Plaintiff does not even allege that the Defendants were aware

of his political affiliation and/or how that was used to form any actions allegedly taken against him. Plaintiff's allegations are simply too broad and nebulous to support any inference of an identifiable political preference by the Defendants such that Count I of the Complaint should be dismissed in its entirety.

    **E.**  **Counts II and III are rife with conclusory allegations that fail to state claims of age or gender discrimination/retaliation as a matter of law.**

At Count II, Plaintiff contends that he was discriminated, harassed and retaliated against on the basis of his sex. ECF 1 at ¶¶36-40. Likewise, at Count III Plaintiff surmises that "but for" his age, Defendants would not have discriminated or retaliated against him under the ADEA. *Id*. at ¶¶41-44. The sole allegations in the Complaint even remotely related to these claims are that Plaintiff was 62 when he resigned, and that at some point Ms. Cerilli stated that Plaintiff could not take directives from female superiors. ECF 1 at ¶¶1, 14. Defendants fails to see how any of the allegations in the Complaint give rise to an inference of either sex or age discrimination/retaliation.

At Count II, to proceed on a claim of disparate treatment under Title VII, a plaintiff must establish a prima facie case consisting of four elements (1) that the employee is a member of a protected class; (2) that the employee was qualified for the job and that his performance was satisfactory; (3) in spite of his qualifications and performance, the employee suffered adverse employment action; and (4) that the employee was treated differently from similarly situated employees. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). An employer's actions must alter the terms, conditions or benefits of employment to qualify as an adverse employment action. *Von Gunten v. Maryland*, 243 F.3d 858, 866 (4th Cir. 2001). Under this analysis, the plaintiff has the burden of establishing a *prima facie* case of discrimination that creates a

presumption that the employer unlawfully discriminated against the employee. *Id*. The burden then shifts to the employer to demonstrate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*.

Plaintiff has not established a *prima facie* case because the County did not subject him to any adverse employment action. To the contrary, Plaintiff resigned upon retirement, which cannot qualify as an adverse employment action. Specific to Count II, there are no individual allegations even suggesting that the County acted individually to treat female employees more favorably than male employees in the terms and conditions of their employment. Even as to Plaintiff's alleged salary claim, the Commissioners were only part of a larger salary board, all of whom were required to vote to take action on any employee. *See generally* 16 P.S. §1620, 1622 and 1625.[5] Any Title VII gender based discrimination claim being asserted by Plaintiff fails as a matter of law and should be dismissed accordingly.

At Count III, the ADEA prohibits employers from discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment because of an individual's age. *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998) citing 29 U.S.C. §623(a)(1). A plaintiff may establish a cause of action under the ADEA with either direct or circumstantial evidence that creates an inference of discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 527 (1993). However, a plaintiff must first establish and prove a *prima facie*

---

[5] Even more, Plaintiff's subjective feelings of entitlement to a raise are not an adverse employment action as a matter of law. *See Tourtellotte v. Eli Lilly and Co.*, 636 Fed. Appx. 831 (3d Cir. 2016)(agreeing with the District Court that "receipt of a less than expected merit increase does not constitute a material change in the terms or conditions of employment, and is subsequently not an adverse employment action[.]").

case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case under the ADEA, a plaintiff must establish (1) that he is over the age of forty; (2) that he was qualified for the job; (3) that despite his qualifications, he was terminated; and (4) that the employer ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination. *See Narin v. Lower Merion School District*, 206 F.3d 323 (3d Cir. 2000); *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101 (3d Cir. 1997).

The Complaint fails to set forth a prima facie case of age discrimination under the ADEA. Plaintiff makes no allegations as to an adverse employment action at the hands of the Defendants. Moreover, Plaintiff has not identified any individual who replaced his position. The Complaint is devoid of any insinuations that the County treated younger employees more favorably than Plaintiff in the terms and conditions of their employment, let alone that Plaintiff was ever replaced. Plaintiff's Complaint fails to set forth a prima facie case of age discrimination under the ADEA and should be dismissed accordingly.

As to any retaliation claim, in order to properly plead a retaliation claim in violation of Title VII, a plaintiff must prove a prima facie case by providing facts showing that: (1) he was engaged in a protected activity; (2) he has suffered an adverse employment action based on exercise of the protected activity; and (3) there is a causal link between the protected activity and the adverse employment action. *Hussein v. UPMC Mercy Hospital*, 466 Fed.Appx. 108, 111-12 (3d Cir. 2012) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) ); *Farrell v. Planters Lifesavers Company*, 206 F.3d 271, 279 (3d Cir. 2000). Further, plaintiff must show a causal connection between his participation in a protected activity and the adverse employment

action. *Thomas v. Pocono Mtn. Sch. Dist.*, 2011 WL 2471532, *8 (M.D. Pa. June 21, 2011). To this end, it remains that Plaintiff has not pled any protected activity that would give rise to a retaliation claim. Even Defendants were to *assume*, which they need not, that Plaintiff's retaliation claim is couched in the sole contention that post-EEOC charge the "the harassment continued[,]" (¶¶22-23), the averments remain so vague that Defendants cannot formulate an answer to the same.

Mr. Walton has not pled a prima facie case of age or sex discrimination or retaliation, and thus Counts II and III are subject to dismissal.

> **F.   Plaintiff fails to state a claim for common law Intentional Infliction of Emotional Distress at Count IV against Defendant Cerilli.**

Under Pennsylvania law, in order to state a claim for intentional infliction of emotional distress, a plaintiff must allege that a defendant's conduct: (1) is extreme and outrageous; (2) is intentional or reckless; and (3) it caused severe emotional distress. *Dingle v. Centimark Corp.*, 2002 WL 1200944, at *8 (E.D. Pa. June 3, 2002) (citing *Wisniewski v. Johns Manville Corp.*, 812 F.2d 81, 85 (3d Cir. 1987)). To plead an intentional infliction of emotional distress claim, a plaintiff must present competent, objective expert testimony that she is suffering from severe emotional distress. *See Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 995, 515 Pa. 183, 197 (1987) (Existence of alleged emotional distress must be supported by competent medical evidence); *Williams v. Guzzardi*, 875 F.2d 46, 51–52 (3d Cir.1989) (Pennsylvania requires "competent medical testimony that the conduct resulted in severe emotional harm").

The Complaint does not allege that Plaintiff has been diagnosed with severe emotional distress, and therefore fails to state a claim upon which relief could be granted at Count IV. The Complaint merely sets forth that Plaintiff has suffered "embarrassment, mental anguish,

inconvenience, emotional distress, anxiety, depression, and fear for his safety and the safety of his family." ECF 1 at ¶35. No information about whether Plaintiff has sought psychiatric or psychological assistance is provided, whether he has been prescribed corresponding mediation or what the basis for either any treatment or medication is provided. What is more, Plaintiff pleads no specifics as to how Cerilli's actions were "outrageous" or "extreme," let alone Cerilli's involvement in this claim. Count IV of the Complaint should therefore respectfully be dismissed.

## IV. CONCLUSION

For these reasons, Defendants respectfully request that the Court dismiss this matter pursuant to F. R. Civ. P. 12(b)(6), as a matter of law.

Respectfully submitted,

**MARSHALL DENNEHEY
WARNER COLEMAN & GOGGIN**

BY:    *s/ Morgan M. J. Randle*
TERESA O. SIRIANNI, ESQUIRE
PA ID #90472
MORGAN M. J. RANDLE, ESQUIRE
PA ID #324470
Union Trust Building, Suite 700
501 Grant Street
Pittsburgh, PA  15219
412-803-1140 phone / 412-803-1188 fax
tosirianni@mdwcg.com
mmrandle@mdwcg.com
**Counsel for Defendants, WESTMORELAND COUNTY, and GINA CERILLI**

LEGAL/140813134.v1