**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN WALTON, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | No:  21-860 |
| v. | ) | |
| | ) | US District Judge Nora Barry Fischer |
| WESTMORELAND COUNTY, | ) | |
| Pennsylvania, and GINA CERILLI, | ) | |
| COMMISSIONER, in her individual | ) | **ELECTRONICALLY FILED** |
| capacity, | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

<u>**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

**I.      SUMMARY OF THE ARGUMENT**

Plaintiff John Walton ("Walton") alleges that the Defendants discriminated against him because of his political affiliation in violation of his right to belief and association under the First and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. §1983 (brought against Westmoreland County and Cerilli), and due to being harassed, discriminated against, and retaliated against because of his sex (brought against Westmoreland County only).  By stipulation of the parties, Mr. Walton's state law claim of intentional infliction of emotional distress against Cerilli is to be dismissed.

As set forth herein, Walton's claims have no evidentiary support and are not reflective of reality.  The record shows that Walton and Cerilli were obviously at odds with one another, which is not unusual within local governments.  However, the events that occurred and led to his resignation, which he alleges to be a constructive discharge, cannot possibly constitute sex and/or retaliation under Title VII or a violation under the First and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. §1983.  Walton's subjective belief of discrimination and/or retaliation cannot survive summary judgment.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendants Westmoreland County and Gina Cerilli incorporate by reference their Concise Statement of Material Facts ("CSMF") pursuant to Local Rule 56.1, which is submitted contemporaneously along with its Motion for Summary Judgment, Appendix, and this Brief.

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 governs motions for summary judgment, and states in relevant part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A plaintiff must "point to concrete evidence in the record that supports each and every essential element of his case" to survive summary judgment.  *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995).  Further, "a party will not be able to withstand a motion for summary judgment merely by making allegations; rather, the party opposing the motion must go beyond its pleading and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial."  *In re IKON Office Solutions, Inc.*, 277 F.3d 658, 666 (3d Cir. 2002).

Additionally, the United States Supreme Court held:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett*, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 2552-53 (1986).

LEGAL/152613382.v1

Moreover, a plaintiff's bald assertions, without any supporting facts, cannot overcome a motion for summary judgment. *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993) (where the movant has produced evidence in support of its motion for summary judgment, the nonmovant cannot rest on the allegations of the pleadings and must do more than create some metaphysical doubt.")

## IV. ARGUMENT

### A. MR. WALTON'S SECTION 1983 CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

Mr. Walton alleges that the Defendants discriminated against him because of his political affiliation in violation of his right to belief and association under the First and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. §1983 (ECF 20, ¶ 37). Although §1983 claims provide a federal cause of action for the violation of a federal right, it is state law which determines when the claim accrues. *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010). A §1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims. *Id.*; *see also Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989). Pennsylvania is the applicable state here, which mandates a two-year statute of limitations period for personal-injury torts. 42 Pa.C.S.A. §5524.

Mr. Walton's original Complaint was filed on July 6, 2021 (ECF 1). Therefore, Count I alleging a §1983 claim of what is now the operative Amended Complaint (ECF 20), is warranted given the dates of the alleged retaliatory acts against Mr. Walton.

Mr. Walton complains of events occurring as early as 2015 through his separation from employment on November 6, 2020. (ECF 20, ¶10). However, Cerilli did not take office as a Westmoreland County Commissioner until January 1, 2016 (Concise Statement of Material Facts ("CSMF") ¶3). On June 27, 2016, Cerilli made her first of four motions to terminate Walton.

(CSMF ¶8).  Thereafter, on July 26, 2016, Cerilli made a second motion to terminate Walton, which was seconded.  (CSMF ¶10).  Further, Mr. Walton testified that Cerilli's efforts to terminate him "began when I did not hire the person [Robert Gettemy] she wanted to be sergeant," which took place in June of 2016.  (CSMF ¶¶15-16).  Thereafter, from August of 2016 to October of 2018, Mr. Walton acknowledged that there were no motions made by Cerilli to terminate him as warden of the prison during this time period, testifying that "she didn't try to fire me.  She didn't try to terminate me.  But she was never cooperative.  She was - - you know, she never took my phone calls."  (CSMF ¶13).  The next chronological complaint is about a "sham investigation" of Henry "Sonny" Caruso, the report of which is dated November 5, 2018.  (CSMF ¶¶76, 98).  Thus, Walton made vague references to undated complaints over a 2.25 year period in the operative Complaint, and has since produced no evidence whatsoever to corroborate those allegations.  Therefore, as no claims arise on or after July 6, 2019, they are barred by the statute of limitations, and consequently, summary judgment should be granted to Defendants as to Count I of Mr. Walton's operative Complaint[1].

**B.    ALTERNATIVELY, MR. WALTON HAS FAILED TO SET FORTH SUFFICIENT FACTS TO ESTABLISH A CAUSE OF ACTION FOR ALLEGED POLITICAL AFFILIATION PURSUANT TO SECTION 1983 AND THE FIRST AND FOURTEENTH AMENDMENTS.**

As set forth above, Defendants argue that the statute of limitations should bar Mr. Walton's claims in Count I of his operative Complaint, wherein Walton contends that he was constructively discharged because of his political affiliations.  Despite the lengthy hyperbole in Walton's testimony via deposition, seven other depositions taken in this matter, and the parties exchange of

---

[1] Defendants acknowledge that Mr. Walton alleges his resignation on November 6, 2020 constitutes a constructive discharge of his employment as warden.  However, as set forth in Section D, below, not only is there no such constructive discharge, but he is barred from arguing the same due to failing to exhaust his administrative remedies.

4

voluminous documentation via discovery, Mr. Walton has failed to produce any direct evidence, or inferential factual support for, any constitutionally protected discrimination by the Defendants.

### 1. *Monell* claim against Defendant Westmoreland County.

As to Defendant, Westmoreland County, Mr. Walton has failed to set forth a viable *Monell* claim. "[A] municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under §1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). However, a city or county government such as Westmoreland County is a "person" for purposes of §1983 and can be liable only for its own misconduct. *Id*. at 692. A plaintiff may make a §1983 claim against a municipality in two ways: "an unconstitutional policy or custom of the municipality led to his or her injuries…, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 798-99 (3d Cir. 2019)) (internal citations and quotations omitted). Here, Mr. Walton asserts an unconstitutional policy or custom theory of *Monell* liability.

### 2. Policy and custom theory of *Monell* liability.

To establish §1983 liability against a local government, the plaintiff must prove that a municipal "policy or custom" is the "moving force" of the constitutional violation at issue. *Monell*, 436 U.S. at. at 694. Thus, to state a claim for liability against Westmoreland County, Mr. Walton must allege that its policies or customs caused the constitutional violations. *Id.*; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003). Mr. Walton "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

5

In addition, a "plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman,* supra, at 798 (citing *Kneipp*, supra, at 1213). A plaintiff "may do so by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges" or that the municipality "had knowledge of 'similar unlawful conduct in the past, … failed to take precautions against future violations, and that [its] failure, at least in part, led to [the] injury.'" *Id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850–51 (3d Cir. 1990)).

"Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Kniepp*, supra, at 1212. Further, "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

Customs are "practices of state officials … so permanent and well settled as to virtually constitute law." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000)(citations and quotations omitted). In other words, a custom is "an act 'that has not been formally approved by an appropriate decisionmaker' but that is so widespread as to have the force of law." *Natale*, suprea, at 584 (quoting *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997)). "Despite these requirements," a plaintiff need not "identify a responsible decisionmaker in his pleading," nor "prove that the custom had the [County's] formal approval." *Estate of Roman v. City of Newark*, 914 F.3d 789 (3d Cir. 2019) (citing *Bielevicz*, 915 F.2d at 850–51 and *Anela v. City of Wildwood*, 790 F.2d 1063, 1067 (3d Cir. 1986)).

6

Under either route to a *Monell* claim, policy or custom, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.  *Watson v. Abington Township*, 478 F.3d 144, 156 (3d Cir. 2007) (citing *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989)).  Mr. Walton has failed to produce any evidence whatsoever of a *Monell* claim based on policy against Westmoreland County.  There simply is no "policy" that is the "moving force" of the constitutional violations at issue.  Here, it is important to clarify that Mr. Walton's allegations focus exclusively on Cerilli, with the operative Complaint asserting that "[b]ecause Cerilli is one of the highest racking [sic] County Officials, Cerilli's actions amount to policy and practice of the County." (ECF 20, ¶41).

Mr. Walton's political retaliation claim is most appropriately viewed as Westmoreland County having a "custom" of allowing a single Commissioner, such as Cerilli, to discriminate against subordinates due to their political affiliations, up to the point of the alleged constructive discharge of Walton as Warden.  However, there is no record supportive of Walton's claim that his role as warden was conditioned upon meeting Cerilli's political objectives.  In support of Mr. Walton's position that Cerilli has a history of political retaliation, his operative Complaint sets forth that "In September of 2019, James Burgess filed a lawsuit against Commissioner Cerilli and others, alleging that, among other things, Cerilli made false accusations against Burgess, that were materially false and motivated by perceived support for, and affiliation with, a political rival of Cerilli, leading to Burgess's wrongful termination." (ECF 20, ¶ 28).  However, by Order dated May 30, 2019, Burgess' Section 1983 claim against Cerilli was dismissed by United States District Court Judge Marilyn J. Horan because he was not a public employee, and even if he was, he was unable to demonstrate that Cerilli engaged in retaliatory conduct. (CSMF ¶ 110).

7

It is also anticipated that Mr. Walton will point to Cerilli wanting to terminate Christine O'Leary, Human Resources Coordinator for Felice & Associates, a non-public entity, because "[s]he said she hated her.  She doesn't support her, and she wanted her fired," but that Cerilli did not elaborate upon what she meant by "support." (CSMF ¶ 111).  Burgess also recalls Cerilli advising her that O'Leary had lied to her.  (CSMF ¶ 112).  Burgess also testified that Cerilli had targeted for termination an IT director, a finance director, and a director of one of the family service departments, as they were costing Westmoreland County too much money.  (CSMF ¶ 113).  But, Burgess acknowledged that those individuals were not targeted by Cerilli due to not supporting her political agenda. (CSMF ¶ 114).  The baseless Burgess lawsuit, coupled with wanting to terminate a non-public entity employee that lied to Cerilli, and Cerilli targeting three other employees for non-political reasons simply does not rise to any type of custom.

Compared to the plaintiff in *Estate of Roman*, where plaintiff pleaded facts (including a press release, a newspaper article, and a consent decree) to support his claim that the City of Newark had notice of a pattern or practice of constitutional violations due to complaints against officers of improper searches and false arrests, here, Mr. Walton simply points to four motions made by Cerilli to terminate Walton, and several comments made by Cerilli regarding Walton, wherein she cites to a laundry list of issues with the prison.  As a local government official, Cerilli cited grievances against Walton in the appropriate platform.  This does not, by itself, provide a factual underpinning for Mr. Walton's claims that a County-wide custom proximately caused his injuries.  *Kilgarriff v. Strunk*, No. 1:18-cv-10120, 2019 WL 1434763, at *4–5 (D.N.J. Mar. 31, 2019); *Estate of Roman*, 914 F.3d at 798 (noting that the "'affirmative link' between the policy or custom and the particular constitutional violation … is done for a custom if [plaintiff] demonstrates that [the municipality] had knowledge of 'similar unlawful conduct in the past, … failed to take

precautions against future violations, and that [its] failure, at least in part, led to [his] injury.'" (citing *Bielevicz*, 915 F.2d at 851)); *Bolden v. City of Wilmington*, Civil Action No. 18-74, 2019 WL 133314, at 3 n.2 (D. Del. Jan. 8, 2019) ("point of requiring that a plaintiff plead facts establishing a 'custom' exists would seem lost if that 'custom' could be established based on the singular experience of one person.").

Walton was unquestionably the ultimate supervisor of the correctional officers accused of troublesome behavior.  The Commissioner addressing what she viewed as the roots of ongoing problems with the prison, through the prison's supervisor, is not a custom of political retaliation. Cerilli had no power to unilaterally make any termination decisions, as is clear by the fact all four of her motions to terminate Walton were unsuccessful; this type of checks and balances within the local government of Westmoreland County is in place for the exact reason of preventing the type of political retaliation alleged by Walton.  Thus, it is respectfully requested that the *Monell* claim against Westmoreland County on the basis of policy or custom be dismissed as a matter of law.

C.   NEITHER WESTMORELAND COUNTY, NOR CERILLI, IN HER INDIVIDUAL CAPACITY, DEPRIVED WALTON OF HIS RIGHT TO POLITICAL BELIEF AND ASSOCIATION UNDER THE FIRST AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION.

Initially, Defendants note that to establish a claim against a person in their individual capacity, a plaintiff must establish each individual defendant acting under color of law, violated his constitutional or statutory rights, and caused the alleged injury. *Fennell v. Penchishen*, No. 19-111, 2019 WL 1934877, at *3 (E.D. Pa. April 30, 2019) (emphasis added) (citing *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005)).  Count I of Mr. Walton's operative Complaint is also against Cerilli, as an individual defendant, in addition to Westmoreland County. However, Mr. Walton's claims against Cerilli in her official capacity is redundant. See *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (claims against individual defendants in their official capacities

9

are equivalent to claims against the governmental entity itself, they are redundant and may be dismissed).

It being undisputed here that Cerilli is a state actor, in her capacity as a Westmoreland County Commissioner, the question becomes whether Walton has offered sufficient evidence of deprivation of his constitutional rights under the First and Fourteenth Amendments of the U.S. Constitution. *Estate of Smith v. Marasco*, 318 F.3d 497, 505 (3d Cir. 2003). The protections afforded by those amendments encompass, *inter alia*, "an individual's right to exercise freedom to associate with others for the common advancement of political beliefs and ideas." *Perez v. Cucci*, 725 F. Supp. 209, 235 (D.N.J. 1989), aff'd, 898 F.2d 142 (3d Cir. 1990). The Supreme Court has held that the right to associate with the political party of one's choice is an integral part of this freedom. *Id*. (citing *Kusper v. Pontikes*, 414 U.S. 51, 56-57 (1973)). "An employee's interests protected under *Elrod v. Burns* [427 U.S. 347 (1976)] are the right to freedom in his political beliefs and associations …." *Liotta v. Borough of Springfield*, 985 F.2d 119, 121 (3d Cir. 1993); *see also Tanner v. McCall*, 625 F.2d 1183, 1189 (5th Cir. 1980) ("Government employers can neither coerce employees to compromise their beliefs nor place unconstitutional conditions upon public employment."), cert denied, 451 U.S. 907 (1981).

Under a political patronage theory, Mr. Walton must show that (1) he was employed at a public agency in a position that does not require political affiliation, (2) he was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in Defendants' decision to terminate his employment. *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007). Implicit within the third prong "are two requirements; a plaintiff must produce evidence to show that defendants had knowledge of his political affiliation in addition to demonstrating causation." *Wheeler v. Twp. of Edison*, 326 F. App'x 118, 121–22

LEGAL/152613382.v1

(citing *Stephens v. Kerrigan*, 122 F.3d 171, 177–180 (3d Cir. 1997) (incorporating Title VII burden-shifting standard in §1983 cases).  "Once the plaintiff establishes a *prima facie* case, the defendant[s] may avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity." *Smith v. City of Allentown*, 589 F.3d 684, 692–93 (3d Cir. 2009) (internal citations and quotation marks omitted).  If the defendants articulate a non-discriminatory reason for plaintiff's termination, plaintiff generally must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to find that discrimination was more likely than not a motivating or determinative cause of termination.  *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994).  "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."  *Id*. at 765.

The record here fails to establish the second and third elements of Walton's *prima facie* case.  Moreover, even if Walton were able to establish his *prima facie* case, Westmoreland County and Cerilli would still be entitled to summary judgment because the record shows that Westmoreland County and Cerilli would have taken the same employment action even in the absence of the alleged protected conduct, in light of the numerous reports of impropriety at the prison over an extended period of time, permitted by the prison's ultimate supervisor, Walton. (CSMF, ¶72).

Although Defendants argue Walton has produced no evidence of participating in any type of constitutionally protected conduct, even if Walton establishes the second prong, he fails to

establish the third prong of test set forth in *Galli*, which requires that Mr. Walton offer sufficient evidence to show that his political affiliation was a substantial or motivating factor in Cerilli's motions to terminate and alleged discrimination against Walton. *See Laskaris v. Thornburgh*, 733 F.2d 260, 264 (3d Cir.) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)), cert denied, 469 U.S. 886 (1984). As noted supra, this element has two components - (1) knowledge, and (2) causation. Cerilli clearly knew Walton was a Democrat, and he even assisted with her campaign for Commissioner (CSMF ¶¶26, 102). However, it is anticipated that Mr. Walton will argue that his friendship and support of other Democrats besides Cerilli caused her to retaliate against him due to said friendships. The record is clear that not only is this not true, but that the requisite "knowledge" needed by Defendants was not non-existent.

### 1. Walton cannot show "knowledge."

On April 15, 2019, Walton submitted a written complaint alleging hostile work environment and relation by Cerilli. Suzanne B. Merrick of Thomas, Thomas & Hafer LLP then issued a "Report of Confidential Independent Investigation" on July 1, 2019, to which Walton testified was undertaken in response to his written complaint. Ms. Merrick indicates in her report that Walton believed several friendships were motivating factors behind Cerilli's treatment of him, being former Westmoreland County Commissioners Ted Kopas ("Kopas"), Tom Balya ("Balya"), and former human resources director Charles A. Dominick ("Dominick"); all of whom are Democrats. When Walton was asked how he believes his relationship with Kopas affected or influenced Cerilli's treatment toward him, he testified "I'm really not sure, to tell you the truth." Contrary to what he reported to Ms. Merrick, Walton testified that he is not alleging that Cerilli's treatment of him had anything to do with Balya. As to Dominick, Walton testified there was an issue with his son who was employed at the prison back around 2013, and he believes that Cerilli

thought his son received preferential treatment.  Walton was told by Balzer and Kopas that Cerilli thought the discipline for his son should have been greater, but does not know when the meeting occurred, where Cerilli allegedly made these comments, or the timeline in relation to any of her four motions to terminate. (ECF 57 Exhibit A, pp. 61-62).  Therefore, Cerilli's issue with Walton's friendship with Dominick was not politically motivated, but out of concern for nepotism, which would not be in the best interest of the prison.  Given that Walton could not articulate during his deposition testimony how these friendships were politically motivated, Defendants clearly did not have "knowledge" of what political activity Walton was participating in that allegedly became the proximate cause of his harm.  This failure of evidence is fatal to Mr. Walton's case, and compels summary judgment.  *Malone*, 1995 WL 222052, at *5 ("Initially, in order to prove that defendants were motivated by his political beliefs, plaintiff must prove that defendants knew of them.") Here, there is no such evidence in the record.

### 2.      Mr. Walton cannot show "causation."

Even if Walton were able to point to evidence in the record to prove that Defendants knew of some sort of political activity of Walton, he still would fail to meet this prong of the test set forth in *Galli* because he cannot offer any evidence that his political views were the cause of Cerilli's motions to terminate.  To the contrary, the record is replete with evidence showing that the "substantial and motivating" reason why Cerilli made these motions was due to Walton's abysmal handling of his subordinates at the prison, coupled with a suicide letter from Caruso that specifically blamed Walton for his death (CSMF ¶¶27-98).  Because Walton fails to produce evidence of specific facts to indicate that political affiliation was the motivating factor in Cerilli's decision to make motions to terminate his employment and/or comment on Walton's job performance, summary judgment is appropriate. *See Walters v. County of Schuylkill*, 129 F. Supp.

2d 726, 735 (M.D. Pa. 2001) (granting summary judgment where plaintiff offers no evidence other than personal feeling that the employment actions were politically motivated); *D'Aurizio*, 963 F. Supp. at 393 (granting summary judgment where plaintiff failed to show that his political affiliation was a substantial or motivating factor in the decision to eliminate his job); *Motto v. Union City*, 1997 U.S. Dist. LEXIS 23401, at *40 (D.N.J. Aug. 27, 1997) (granting summary judgment dismissing political discrimination claim, where plaintiff's belief that termination was politically motivated was, at best, speculative). In this respect, this case resembles *Robertson v. Fiore*, supra. There, as in this case, the record showed that the "substantial or motivating" factor in the employee's termination was not political affiliation, but rather the employee's poor work performance. 62 F.3d at 601. Because "the record [did] not support a conclusion that politics, rather than poor performance, caused [the employee's] discharge," the Third Circuit affirmed the grant of summary judgment in favor of public employer. *Id.*

### D.    MR. WALTON'S TITLE VII CLAIMS AT COUNT II ARE BARRED.

Our Courts have explained that "[a]n EEOC charge must be filed within 300 days of the 'alleged unlawful employment practice' if the individual has initiated proceedings with a state or local agency, or 180 days if it is not dually filed. *Emmell v. Phoenixville Hospital Company, LLC*, 303 F. Supp. 3d 314, 325 (E.D. Pa. Mar. 29 2018)(quoting 42 U.S.C. §12117(a) §2000e-5(e)(1) (establishing the limitation periods)(Title VII). The Courts have explained that "[o]therwise, the claim is time barred and the claimant cannot recover." *Id.* The pled date of the EEOC Charge produced in discovery is September 27, 2019 (CSMF, ¶ 129).

"Both the [] period for filing the administrative complaint and the 90–day period for filing the court action are treated as statutes of limitations." *Burgh v. Borough of Council of Borough of Montrose*, 251 F.3d 465, 470-1 (3d Cir. 2001) (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S.

14

385, 393 (1982) (likening requirement of timely filing of administrative charge to statute of limitations); *Figueroa v. Buccaneer Hotel Inc.,* 188 F.3d 172, 176 (3d Cir. 1999) (same with respect to time for bringing court action after receipt of right-to-sue letter).

To this end, Mr. Walton does not clearly set forth a right to relief on any claims prior to November 15, 2018 (300 days prior to the pled date of a filed EEOC Charge of September 27, 2019). In fact, from August of 2016 to October of 2018, Walton acknowledged that there were no motions made by Cerilli to terminate him as warden of the prison during this time period, testifying that "she didn't try to fire me. She didn't try to terminate me. But she was never cooperative. She was - - you know, she never took my phone calls" (CSMF ¶13). Thereafter, the only evidence produced by Mr. Walton after November 15, 2018 regard Cerilli publicly commenting on November 16, 2018 about her "disgust" for Mr. Walton (ECF 20, ¶15); Cerilli's two motions to terminate Walton, made on November 16, 2018 (CSMF ¶ 12); a December 12, 2018 letter sent by Cerilli to the Prison Board setting forth Mr. Walton's mistreatment of female prison employees and mishandling of an investigation involving corrections officer Henry "Sonny" Caruso (CSMF ¶¶115-120); and Walton did not receive a pay increase in July of 2020 (CSMF ¶ 130). Any claims arising prior to November 15, 2018, including Cerilli's first two motions to terminate Walton, are barred by the statute of limitations and should be dismissed accordingly.

Walton further suggests that these allegations are to illustrate a "campaign to oust Walton" and "continuous conduct" leading to his constructive discharge." *Id*. Respectfully, this argument misses the mark and cannot prevent dismissal as to the time-barred allegations. Based on this response, it appears that Mr. Walton is attempting to connect all of the alleged actions together, based on the Court's historical analysis and application of a "continuing violation theory." Defendant submits that Mr. Walton has not even remotely met the threshold to establish such a

theory based on the evidence produced in this matter.  *See Bumbarger v. New Enterprise Stone and Lime Co., Inc.,* 170 F.Supp.3d 801, 825 (W.D. Pa. 2016).  The Third Circuit has adopted a two-part test to determine whether the continuing violation doctrine applies in any given case, including that the plaintiff:  (1) must demonstrate that at least one act occurred within the filing period; and (2) that the alleged wrong is more than just an isolated or sporadic act.  *Id.* (internal references omitted).  While Walton may claim that his alleged constructive discharge claim falls within the 300 day limitation period, his other alleged acts are isolated and sporadic and were broken by at least a 2 year period in which there were no motions or other complaints against Walton and at best, an allegation that Cerilli would not return his phone calls.

As to the constructive discharge itself, which would be the date of Mr. Walton's resignation as warden on November 6, 2020, any such claim is barred for Mr. Walton's failure to exhaust his administrative remedies. (CSMF ¶ 2).  It is well-established that prior to filing a lawsuit in federal court that a plaintiff must first exhaust his administrative remedies by filing a charge with the EEOC within 300 days of the alleged violation. See *Churchhill v. Star Enterprises*, 183 F.3d 184, 190 (3d. Cir. 1999). Where the allegations in a subsequent federal complaint are sufficiently distinct from those presented in the EEOC charge and were not part of the investigation, district courts have required the exhaustion of administrative remedies before a plaintiff can pursue such allegations. See *Antol v. Perry*, 82 F.3d 1291 (3d Cir. 1996), and see, *Rogan v. Giant Eagle*, *Inc.*, 113 F. Supp.2d 777 (W.D. Pa. 2000).  Here, Mr. Walton's EEOC Charge of Discrimination makes clear that he did not allege constructive discharge with the EEOC, nor did he ever amend his EEOC Charge to include such a claim.  As such, he cannot now argue that the acts alleged in his operative Complaint relative to constructive discharge are within the scope of his prior EEOC charge or any investigation arising therefrom especially given the fact of more than a two year passage of time

16

between Cerilli's last motion to terminate his employment and his resignation.  See *Waiters v. Parsons*, 729 F.2d 233 (3d. Cir. 1984).  Given Mr. Walton's failure to exhaust his administrative remedies, the constructive discharge claim in Count II of his operative Complaint should be dismissed as a matter of law.

E.   **ALTERNATIVELY, MR. WALTON'S TITLE VII CLAIM AT COUNT II SHOULD BE DISMISSED BECAUSE THE UNDISPUTED MATERIAL FACTS ESTABLISH THAT HE CANNOT MEET HIS BURDEN OF PROVING SEX DISCRIMINATION.**

Count II of Mr. Walton's Amended Complaint alleges sex discrimination in violation of Title VII, which makes it unlawful for an employer to discriminate against an individual with respect to his/her employment on the basis of the individual's race, color, religion, sex, or national origin. 42 U.S.C. §2000e-2(a).  Walton alleges that he was constructively discharged due to being harassed, discriminated against, and retaliated against because of his sex (ECF 20, ¶¶44, 47).

A plaintiff's Title VII discrimination claim is analyzed under the *McDonnell-Douglas* framework.  *See Sherrod v. Phila. Gas Works,* 57 Fed. Appx. 68, 73 (3d Cir. 2003).  However, at all times, a plaintiff bears the burden of persuasion of establishing a *prima facie* case of discrimination.  *Id.*  To establish a *prima facie* case of gender discrimination a plaintiff must demonstrate that:  (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and, (4) members of the opposite sex were treated more favorably or the adverse action gives rise to an inference of intentional discrimination. *Gilson v. Pennsylvania State Police*, 175 F.Supp.3d 528 (3d. Cir. 2016).

In analyzing whether the employer's rationale for an employment decision is pretextual, Third Circuit courts frequently reject a plaintiff's claims that rely solely on his own subjective beliefs or suspicions that gender was a factor in the employment decision.  *See, e.g.*, *Tolan v. Temple Health Sys. Transp. Team*, WL 706049, at *16 (E.D. Pa. 2013), *aff'd* 557 Fed. App'x. 132

17

(3d Cir. 2014).  Mere speculation that the employer's actions were discriminatory without evidence supporting bald assertions warrants dismissal of the claim as a matter of law.  *Id.*

Here, Mr. Walton cannot establish a *prima facie* case of discrimination.  Specifically, an adverse employment action, as required for a Title VII gender discrimination action, requires a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; see also *Kahan v. Slippery Rock University of Pennsylvania*, 50 F.Supp.3d 667 (3d. Cir. 2014).  Mr. Walton can make no such showing here as he was never fired, demoted, reassigned, or had wages withheld.  The last element then focuses on whether the employer treated individuals less favorable than others because of their gender. *Pivirotto v. Innovative Sys.*, 191 F.3d 344, 352 (3d Cir. 1999).  At the *prima facie* stage, the "central focus" is on whether an employer has treated an employee less favorably than others on the basis of an illicit discriminatory criterion.  *Howard v. Blalock Elec. Serv., Inc.*, 742 F. Supp. 2d 681, 701–02 (W.D. Pa. 2010).

It is anticipated Mr. Walton will argue that the adverse employment action arose from the four motions to terminate, in addition to his not receiving a pay increase.  The reasons for the four motions to terminate are cited throughout this brief and as supported by the investigative reports. Additionally, Walton did not receive a pay increase in July of 2020 (CSMF ¶¶130-133).  However, Cerilli alone, as a Commissioner, could not grant, or refuse, a raise, as she was just one of three Commissioners, and Jeffrey Balzer testified that "we could have given [a raise] to him, but the other *two* commissioners were not on board. That's why it didn't happen." (CSMF ¶ 133).

Most significantly, there is no inference of intentional discrimination.  When Walton was asked for the basis of his sexual discrimination claim, he testified that Cerilli made public

18

statements suggesting he could not take orders from a female superior, and that she publicly referred to him as a Neanderthal, but he could not recall when this occurred.  (CSMF, ¶116). Walton makes the allegations of sexual discrimination based upon comments made by Cerilli, only.  (CSMF, ¶117).  Walton testified that "I had no issues taking direction from females.  I've had female bosses my whole life.  I've worked with females.  One will be, again, Melissa Guiddy from the solicitor's office.  Amanda Bernard from HR."  (CSMF, ¶¶118).

Cerilli testified to her understanding that a "Neanderthal by definition is somebody that is rude and stupid which I stand behind.  He wants to say it's because he is a man.  It has nothing to do with being a man.  It's because he is rude and stupid. Him not taking direction from a woman, I have been his only boss except Senator Kim Ward was on the prison board for a few months before she became Senator way, way back in time, if he was even a warden at the time.  Regardless, I am his only female boss.  He likes to say that he works well with Melissa Guiddy and Amanda Bernard, and that's great, but those are his coworkers.  Those aren't his bosses.  I am his one and only female boss."  (CSMF, ¶119).

As set forth above, the evidence shows that Walton did not suffer an adverse employment action, nor was he discriminated against based on his sex as evidenced by the fact that there is no evidence of similarly situated individuals who were treated differently let alone treated differently due to their sex.  Walton's identification of two female alleged comparators falls far short of his burden of establishing unequal treatment.  As Cerilli explains, the only two female comparators are Walton's co-workers, not his superior.  Further, Walton has produced no evidence whatsoever as to Cerilli allegedly discriminating against any other individual due to their gender, opting instead to vaguely allude to political vendettas, wholly unrelated to gender, which were allegedly pursued by Cerilli.  No reasonable juror could find that Cerilli was motived by any unlawful

LEGAL/152613382.v1

animus and certainly not based on Mr. Walton's gender.  Moreover, Walton was replaced by a male as the warden.   Westmoreland County is thereby entitled to summary judgment on Mr. Walton's Title VII claim.

> **1.** **Mr. Walton has failed to establish a constructive discharge claim against Defendant Westmoreland County.**

Even if Mr. Walton's constructive discharge claim is not found to be barred due to his failure to exhaust his administrative remedies, he fails to establish a *prima facie* case of constructive discharge against Defendant Westmoreland County.  While Defendant Westmoreland County contends there was no sexual discrimination, it alternatively argues that there was no "constructive discharge," for Title VII purposes, which occurs when an employer knowingly permits conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.  Civil Rights Act of 1964, §701 *et seq*., 42 U.S.C.A. §2000e *et seq*.; *see also Hare v. Potter*, 549 F.Supp.2d 688 (3d Cir. 2007).  The intolerable conditions must arise from some prohibited form of discrimination such as disparate treatment sex discrimination, which Walton alleges in the present matter, and is addressed at length, above.  *Harris v. Forklift systems, Inc.*, 510 U.S. 17 (1993).  A constructive discharge also requires a showing that the employee granted the employer a reasonable opportunity to correct the intolerable condition before terminating the employment.  *See Connors v. Chrysler Fin. Corp.,* 160 F.3d 971 (3d Cir. 1998).

Mr. Walton has not produced any evidence to support a claim for constructive discharge.  Specifically, Mr. Walton has not proven that the working conditions were so intolerable that he or any other reasonable person felt compelled to resign.  As stated previously, from August of 2016 to October of 2018 and again from December of 2018 to the time of his resignation, Mr. Walton acknowledged that there were no motions made by Cerilli to terminate him as warden of the prison

LEGAL/152613382.v1

during this time period.  (CSMF ¶13).  At most, Walton complained because Cerilli would not return his calls.

In *EEOC v. Bimbo Bakeries USA, Inc.,* 2010 U.S. Dist. LEXIS 13654 (M.D. Pa. 2010), the Court held that the EEOC failed to allege sufficient allegations in a race discrimination claim.  The employee alleged that on several occasions employees used racial epitaphs in his presence.  The Complaint plead that his exposure to the epitaphs became "intolerable."  However, the Court held that "[i]ntolerability is not established by showing…that the employee subjectively felt compelled to resign; presumably every resignation occurs because the employee believes that it is in his best interest to resign."  *Bimbo Bakeries,* *17-18, citing, *Conners, supra.*  The Court continued, "[i]nstead, courts should assess intolerability 'by the objective standard of whether a reasonable person in the employee's position would have felt *compelled to resign,* that is, whether he would have had no choice but to resign."  *Id.*  The Court held that the allegation that the working conditions were intolerable was insufficiently specific.  *Bimbo Bakeries,* *18.

In this case, Walton has not produced evidence that his working conditions were intolerable; in fact, after Walton's resignation, Commissioners Doug Chew **and Cerilli** created a part-time consultant position for Walton to compensate him for attending court-ordered hearings involving as many as six pending lawsuits and internal grievance hearings in which his testimony is required.  (CSMF ¶127).  It is unfathomable that Walton could argue that he granted the employer a reasonable opportunity to correct the alleged intolerable condition, when after his resignation, he returned to work for Westmoreland County.  Further, Walton's replacement as warden, Bryan Kline, is male, and Cerilli voted in favor of his hiring.  (CSMF ¶¶128-129).  Lastly, Walton testified that he first decided to draw from his retirement when he requested a raise in February of 2020, and discovered his request would be denied in May, June, or July of 2020.

(CSMF ¶131).  To that end, Cerilli alone, as a Commissioner, could not grant, or refuse, a raise, as she was just one of three Commissioners, and Balzer testified that "we could have given [a raise] to him, but the other two commissioners were not on board.  That's why it didn't happen." (CSMF ¶133).  Thus, summary judgment should be granted in favor of Defendant Westmoreland County regarding the constructive discharge claim.

## V.   CONCLUSION

For these reasons, Westmoreland County and Gina Cerilli respectfully request this Honorable Court to grant its Motion for Summary Judgment in its entirety, with prejudice.

Respectfully submitted,

**MARSHALL DENNEHEY
WARNER COLEMAN & GOGGIN**

BY:    _s/ Teresa O. Sirianni_____
TERESA O. SIRIANNI, ESQUIRE
PA ID #90472
**Counsel for Defendants, WESTMORELAND
COUNTY, Pennsylvania, and GINA CERILLI,
COMMISSIONER, in her individual capacity**
Union Trust Building, Suite 700
501 Grant Street
Pittsburgh, PA  15219
(412) 803-1140, (412) 803-1188/fax
TOSirianni@mdwcg.com

LEGAL/152613382.v1